## NO. 16-1091

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____


**JEFFREY BRILL**,
*Plaintiff-Appellant*,

v.

**TRANS UNION LLC**,
*Defendant-Appellee*.


_____


On appeal from a final order of the
U.S. District Court for the Western District of Wisconsin
(Honorable Stephen L. Crocker, U.S. Magistrate Judge)

---

### APPELLANT'S REPLY BRIEF

---

Joel Winnig
ATTORNEY JOEL WINNIG
414 D'Onofrio Drive, Suite 120
Madison, WI 53719
(608) 829-2888

Julie A. Murray
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
jmurray@citizen.org


*Counsel for Plaintiff-Appellant Jeffrey Brill*

June 1, 2016

# TABLE OF CONTENTS

Table of Authorities ................................................................. ii

Summary of Argument ...............................................................1

Argument......................................................................................3

I.     Trans Union Misunderstands the Pleading Standard for a
       Reinvestigation Claim Under the FCRA. ........................................3

II.    Trans Union Mischaracterizes the Information That Brill Brought to
       Its Attention, Overstates the Cost of a Thorough Reinvestigation, and
       Ignores Harms to Brill of Inaccurately Reported Information. ......................5

       A.     Information that Brill provided to Trans Union ....................................5

       B.     Cost of reinvestigation ..........................................................8

       C.     Harms to Brill of inaccurate reporting ................................................11

III.   The Case Law of Other Circuits Supports Brill's Claim.............................12

IV.    The FCRA Does Not Relieve Consumer Reporting Agencies of Their
       Duty to Reinvestigate in Cases of Fraud. ......................................18

Conclusion ....................................................................................20

Certificate of Compliance .........................................................21

Certificate of Service ...............................................................21

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Trans Union LLC*,
    367 F. Supp. 2d 1225 (W.D. Wis. 2005) ........................................................6

*Cahlin v. General Motors Acceptance Corp.*,
    936 F.2d 1151 (11th Cir. 1991) ...................................................................16

*Crabill v. Trans Union, LLC*,
    259 F.3d 662 (7th Cir. 2001) ..........................................................................4

*Cushman v. Trans Union Corp.*,
    115 F.3d 220 (3d Cir. 1997) ..................................................7, 12, 13, 16, 18

*DeAndrade v. Trans Union LLC*,
    523 F.3d 61 (1st Cir. 2008)..................................................................15, 16

*Henson v. CSC Credit Services*,
    29 F.3d 280 (7th Cir. 1994) ................................................1, 3, 4, 5, 9, 10, 18

*Johnson v. MBNA America Bank, NA*,
    357 F.3d 426 (4th Cir. 2004) .......................................................7, 13, 14, 15

*Omar v. Experian Information Solutions, Inc.*,
    No. 10-cv-1047, 2012 WL 2930778 (S.D. Ind. July 18, 2012).....................17

*Patriotic Veterans, Inc. v. Indiana*,
    736 F.3d 1041 (7th Cir. 2013) ......................................................................19

*Pinner v. Schmidt*,
    805 F.2d 1258 (5th Cir. 1986) .........................................................7, 13, 14

*Stevenson v. TRW Inc.*,
    987 F.2d 288 (5th Cir. 1993) ..........................................................7, 12, 13

## STATUTES

15 U.S.C. § 1681(b) ...............................................................................................19

15 U.S.C. § 1681a(b) ...........................................................................19

15 U.S.C. § 1681e(b) .......................................................................9, 19

15 U.S.C. § 1681i .....................................................................1, 3, 10, 12

15 U.S.C. § 1681i(a) ..........................................................................13

15 U.S.C. § 1681i(a)(1)(A) ..............................................................7, 15

15 U.S.C. § 1681i(a)(4)........................................................................6

15 U.S.C. § 1681i(a)(5)(A) ...........................................................7, 9, 11

15 U.S.C. § 1681n...............................................................................19

15 U.S.C. § 1681o...............................................................................19

15 U.S.C. § 1681s-2(b)(1)....................................................................15

## SUMMARY OF ARGUMENT

The parties agree that this Court's decision in *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994), provides the framework for determining whether a consumer reporting agency conducts a reasonable reinvestigation of a disputed debt under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681i. *See* Response Br. 9. Under *Henson*, whether the "reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Id.* at 287. The "agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.*

Trans Union's position that it had no obligation—as a matter of law—to go beyond an automated consumer dispute verification (ACDV) request to Toyota to reinvestigate Brill's claim of forgery rests on a misunderstanding of what is required at the pleading stage to state a section 1681i claim, a mischaracterization of the costs and interests at stake in balancing under *Henson*, and a misreading of relevant case law and the FCRA's statutory scheme.

First, a consumer need not demonstrate at the motion-to-dismiss stage that the balancing of factors under *Henson* weighs in favor of the consumer's

1

reinvestigation claim. Brill's pleadings in this case, particularly when measured against those approved by this Court in *Henson*, are plainly sufficient to survive a motion to dismiss. It is for the trier of fact to weigh the *Henson* factors.

Second, Trans Union's rendition of *Henson* balancing rests on an overstatement of the cost of reinvestigation, wrongly dismisses the value of key information presented by Brill to alert Trans Union to the unreliability of Toyota's report, and ignores the consequences for Brill that resulted from Trans Union's refusal to correct the inaccurate information.

Third, the decisions of other courts of appeals and the FCRA's statutory scheme all support Brill's position that reinvestigations are unlikely to be reasonable where a consumer reporting agency, when faced with allegations of fraud, fails to go beyond the original source of disputed information. Trans Union's response in this Court adds nothing of substance beyond the district court's rationale. It marshals a couple of off-point court of appeals cases that do not involve disputes based on alleged fraud and a few district court decisions. It also wrongly resists a central proposition of the FCRA, evident from the statute's clear language, that Congress intended consumer reporting agencies to play a central role in the accuracy of reporting information, irrespective of the complementary role played by furnishers of such information. That a consumer has a private right of action against a furnisher of information does not preclude the

consumer from bringing suit against a consumer reporting agency that violates the statute.

## ARGUMENT

### I.    Trans Union Misunderstands the Pleading Standard for a Reinvestigation Claim Under the FCRA.

Trans Union never directly wrestles with *Henson*'s admonition that the "trier of fact must weigh" the factors set out in that opinion to gauge the reasonableness of a reinvestigation under the FCRA. 29 F.3d at 287. In Trans Union's view, because it could not invalidate Brill's debt, it was not required to go beyond an ACDV to reinvestigate Brill's dispute of the debt. *See* Response Br. 4-5, 18. The logical implication of Trans Union's position is that—as a categorical matter— when a consumer disputes a debt based on a forgery of the consumer's signature, a consumer reporting agency need do no more than parrot the original source of information. Unless the furnisher of the information confirms to the reporting agency that the report is inaccurate, the reporting agency will have no duty to remove the disputed information from a consumer's credit report. No precedent supports this categorical rule.

The best guide as to what is required to state a claim under 15 U.S.C. § 1681i is *Henson* itself. In that case, based on inaccurate information in a court docket, Trans Union erroneously reported that the plaintiffs were subject to a judgment debt. The consumers' complaint alleged a violation of section 1681i,

stating that the reported information was erroneous and "arose out of [an] earlier . . . state court action." 29 F.3d at 283. The complaint also alleged that the consumers "contacted Trans [Union] twice, in writing to correct the horrible injustice. However, nobody at Trans [Union] would correct the injustice." *Id.* (internal quotation marks omitted). This Court, viewing the facts in the light most favorable to the consumers, held that the complaint could "reasonably be considered as an allegation that [one of the consumers] contacted Trans Union and notified it of the disputed money judgment and that Trans Union did not conduct a proper reinvestigation and failed to correct the inaccurate information." *Id.* at 286. It thus reversed a district court's dismissal of the consumers' section 1681i claim and emphasized that if the consumers demonstrated on remand that they brought the alleged error to the agency's attention, "the trier of fact must balance" the factors relevant to assessing reasonableness. *Id.* at 287; *cf. Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) (holding that the reasonableness of a furnisher's procedures for assessing accuracy under the FCRA "is treated as a factual question even when the underlying facts are undisputed").

In sum, this Court's precedent does not require that a consumer establish at the pleading stage that the balancing of relevant factors under *Henson* favors the consumer. Brill was under no obligation to do so here.

## II. Trans Union Mischaracterizes the Information That Brill Brought to Its Attention, Overstates the Cost of a Thorough Reinvestigation, and Ignores Harms to Brill of Inaccurately Reported Information.

### A. Information that Brill provided to Trans Union.

Trans Union acknowledges (at p. 9) that the reasonableness of a reinvestigation is gauged in part based on whether a consumer alerts a reporting agency "to the possibility that the source [of disputed information] may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Henson*, 29 F.3d at 287. Trans Union argues that this factor supports its position by contending that Brill provided Trans Union with only a "bare assertion that the signature [on the lease extension] was a forgery," Response Br. 8; *id.* at 5, and by stating that it was not required "to accept Brill's claim at face value that the signatures [on the original lease and extension] were inconsistent," *id.* at 11.

Brill did not, however, provide only a "bare assertion" of forgery. Rather, he produced to Trans Union a sample of his true signature by sharing a copy of the 2009 lease agreement for comparison with the forged 2013 lease document. Brill pointed out that—unlike the phony signature on the 2013 document—he always uses his middle initial, and he directed Trans Union's attention to four other respects in which the real 2009 and fake 2013 signatures differ. A3, A6 n.5; A25. Brill also suggested to Trans Union that the employees or agents of Toyota were likely to have helpful information about the disputed lease document. A26. Trans

Union thus did not have to take Brill's claim of forgery at face value. It could have looked at the signatures itself or talked to other individuals who might potentially be knowledgeable. In addition, Brill highlighted for Trans Union the fact that its report for Brill listed the Toyota debt as stemming from a 36-month account opened in May 2009, yet reported past-due payments nearly five years after the account was opened. A4; A24. This information should have raised another red flag for Trans Union that Toyota's reporting was unreliable.

Trans Union's reliance (at p. 11-12) on *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225 (W.D. Wis. 2005), in evaluating the utility of information provided by Brill is misplaced. In *Anderson*, a bank's erroneous report that a consumer was dead "made its way into [Trans Union's] system and defied both the bank's and [Trans Union's] efforts to eliminate it." *Id.* at 1237. In evaluating the consumer's claim under 15 U.S.C. § 1681i(a)(4) that Trans Union failed to review and consider all information that the consumer submitted, the district court rejected the contention that subsection (a)(4) required the consumer reporting agency to accept statements in a consumer's letter, unaccompanied by supporting evidence, as true. *Id.* at 1234-35. Here, unlike the consumer in *Anderson*, Brill submitted evidence to Trans Union that alerted the agency to the unreliability of Toyota's report. In addition, Brill has not argued that Trans Union had to accept his dispute

as true, only that it had an obligation under section 1681i(a)(1)(A) to conduct a reasonable reinvestigation of the dispute but did not do so.

Trans Union suggests (at p. 12) that if Brill's dispute is sufficient to support removal of the information from his credit report, consumers will commit fraud by claiming that their signatures have been forged in order to avoid responsibility for accurately reported debts. Brill is not arguing, however, that Trans Union be required to accept such statements as controlling in all cases, particularly in the absence of any evidence. In addition, claims similar to Brill's have been clearly cognizable in the Third, Fourth, and Fifth Circuits for many years without the rush of fraud that Trans Union threatens. *See Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004); *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997); *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986).

Nor does the prospect of removing information from a credit report where a consumer's dispute cannot be verified offend the FCRA. *See* Response Br. 12. Indeed, under the FCRA, section 1681i(a)(5)(A), once the reinvestigation requirement has been triggered, the default rule is that the disputed information must be deleted or modified unless it can be verified—that is, the statute requires the consumer reporting agency to give the benefit of the doubt to the consumer.

7

**B.     Cost of reinvestigation.** Trans Union overstates the cost of verifying the disputed information in this case. First, it contends that any form of handwriting analysis would have been unreasonable to conduct because such analysis would have been expensive and unreliable. Although Trans Union says that the district court "correctly found that [handwriting analysis] would be quite costly," Response Br. 10 (internal quotation marks omitted), the court's asserted finding in this regard rested not on anything in Brill's complaint, or on any other factual support for that matter, but exclusively on a pre-2007, non-precedential opinion that cannot be cited to this Court, *see* Opening Br. 24.

Trans Union also argues that the district court correctly "found . . . that courts remain skeptical whether even trained experts can draw reliable conclusions from handwriting comparisons" and "not[ed] that the entire field of handwriting analysis rests on a shaky foundation." Response Br. 9 (citing A9). As Brill has explained, however, the district court's conclusion in this regard rested on a decision involving the admissibility of handwriting analysis as evidence in a criminal case, and neither the district court nor Trans Union has cited authority for limiting a consumer reporting agency's reinvestigation to information that would be admissible in a criminal trial. Opening Br. 24-25. In addition, the outcome of any handwriting analysis need not be "definitive," as Trans Union suggests (at p. 11), to be a necessary and useful part of a reasonable reinvestigation. The FCRA

recognizes that in some cases a reporting agency will conclude that a debt "cannot be verified," and in those circumstances must "promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation." 15 U.S.C. § 1681i(a)(5)(A).

Second, Trans Union overstates the cost of reinvestigation by dismissing the possibility that it could have spoken with Toyota or its employees who negotiated the lease extension or examined whether Toyota had reasonable procedures in place to prevent fraud. Trans Union contends that these measures would "quite obviously . . . be prohibitively expensive if such was required in response to every dispute Trans Union receives." Response Br. 12-13. Trans Union cites no factual basis for this assertion. In any event, the question is not whether Trans Union is required to conduct similar inquiries for every dispute it receives. The question is whether it was required to do so for *this dispute*, where Brill "alerted the reporting agency to the possibility that the source may be unreliable," *Henson*, 29 F.3d at 287, and where the harms to Brill of the adverse credit report were obvious.

This Court's decision in *Henson* is instructive in its application of the reinvestigation requirement and the contrast it drew between the cost of fulfilling that duty and the cost of fulfilling obligations associated with initial reporting under 15 U.S.C. § 1681e(b). *Henson* held as a matter of law that a "reporting

agency is not liable under the FCRA [section 1681e(b)], for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." 29 F.3d at 285. In that context, this Court recognized that a contrary rule would require "reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action" and "to engage in background research" that would be "burdensome and inefficient" when done for all pieces of information in consumers' credit reports. *Id.* at 285-86. However, *Henson* reinstated the consumer's *reinvestigation* claim under 15 U.S.C. § 1681i. The Court recognized that once a consumer disputes information in a credit report, exclusive reliance on public court documents "may not be justified" because the consumer reporting agency can at that time "target its resources in a more efficient manner and conduct a more thorough investigation." 29 F.3d at 286-87.

Accordingly, *Henson* indicates that at the reinvestigation stage, a reporting agency may be required to "go beyond the face" of records and to "engage in background research," even though such activities are not required before a consumer gives notice of a dispute. *Id.* at 285. It thus undercuts Trans Union's assertion that investigatory measures beyond the ACDV are categorically too expensive or burdensome to be required as part of a reasonable reinvestigation under the FCRA.

10

Trans Union also contends that speaking with Toyota or its employees "would not have resolved the issue of the authenticity of Brill's signature" on the lease extension and was therefore not required. Response Br. 13. But Trans Union's reliance on that conclusory statement does not make it so. In addition, as noted above, the FCRA does not relieve a reporting agency of a duty to reinvestigate anytime a reinvestigation *may* not resolve a consumer's dispute. Indeed, the FCRA's requirement that a consumer reporting agency delete information that cannot be verified, 15 U.S.C. § 1681i(a)(5)(A), anticipates that in certain circumstances a credit reporting agency will be unable to reach a definitive conclusion.

**C.     Harms to Brill of inaccurate reporting.** Trans Union is silent with respect to the obvious harms to Brill that would, and did, result from the inaccurate information reported on Brill's credit report. Trans Union does not dispute that it could have foreseen that the information—which not only attributed to Brill a debt that he did not owe but also indicated that Brill was delinquent in paying that debt—would result in denials of credit, less favorable terms of credit, anxiety and stress, and financial losses related to each of these outcomes. *See* A27-28. A reasonable jury could find that the possible harm to Brill of the inaccurate information far outweighed the cost to Trans Union of conducting a more thorough investigation.

## III.   The Case Law of Other Circuits Supports Brill's Claim.

In his opening brief, Brill demonstrated that reinvestigations of fraud are unlikely to be reasonable if they involve only the source of disputed information, and he relied on cases from the Third, Fourth, and Fifth Circuits. Opening Br. 18-22. Trans Union offers no compelling response.

**A.**   Trans Union asserts that *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997), and *Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993), are not applicable because in this case Trans Union "did not have the authority to determine whether [the lease extension] was valid or the signature was a forgery." Response Br. 20. That argument is misguided because precisely the same thing could be said of the reporting agencies in *Cushman* and *Stevenson*.

In *Cushman*, an "unknown person . . . applied under Cushman's name for credit cards" that later showed up as delinquent accounts on the consumer's credit report. 115 F.3d at 222; *see also id.* (describing how one creditor later determined that a credit card application purportedly from the consumer was fraudulent by comparing a handwriting sample with the credit card application). The court of appeals held that it was for a jury to decide whether the reporting agency's reinvestigation was reasonable under section 1681i, where the reinvestigation consisted only of determining that certain personal information used to open the accounts matched that of the consumer and of asking whether the consumer had

opened a fraud investigation with the creditors. *Id.* at 222, 226. That the reporting agency could not cancel the debt on the creditor's behalf was irrelevant.

In *Stevenson*, the consumer disputed some accounts on the ground that they had been opened by his estranged son, who used the consumer's social security number without his knowledge. 987 F.2d at 291. After a bench trial, a district court found that the reporting agency violated section 1681i(a) by failing to delete promptly inaccurate or unverifiable information in the consumer's file. *Id.* at 293. As in the instant case, the reporting agency had no power to void the debts, yet the Fifth Circuit affirmed.[1]

**B.**     Trans Union attempts to distinguish *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986), and *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004), on the ground that neither case addressed a consumer reporting agency's "reinvestigation requirements when asked to determine the authenticity of a

---

[1] Trans Union relies in passing on a portion of the district court opinion that dismissed *Stevenson* as a case in which a consumer reporting agency could have, but did not, "act[] more quickly" to remove inaccurate or unverifiable information from a credit report. Response Br. 19 (citing A11). Although *Stevenson* faulted the consumer reporting agency for the timing of deletion, it also considered the threshold issue as to whether the agency had any obligation to remove information in the credit report, that is, whether the information was inaccurate or could not be verified. 987 F.2d at 293. This portion of *Stevenson*'s analysis—which addresses a consumer reporting agency's obligation to reinvestigate information about a debt procured by fraud—is directly applicable here. *See* Opening Br. 19-20.

consumer's contract with his creditor." Response Br. 20. This factual distinction is one without a legal difference.

Although *Pinner* did not involve the authenticity of a contract, it *did* involve the authenticity of certain charges added to a consumer's credit account with his employer. 805 F.3d at 1260-61. The Fifth Circuit affirmed a jury verdict that a reporting agency did not reasonably reinvestigate the accuracy of those charges when it called only the person whom the consumer had accused of adding the fictitious charges. *Id.* at 1262. In *Pinner*, as in this case, the reporting agency had to do more to reinvestigate the underlying facts supporting a purported debt than parrot the original source.

Similarly, *Johnson* involved the accuracy of information from a credit card company's computer system, which contained "a code indicating that [the consumer] was the sole responsible party on the account." 357 F.3d at 431. The consumer disputed that information, contending that she was merely an authorized user on the account and not responsible for paying the debt. *Id.* A jury applied the balancing test endorsed by this Court in *Henson*. *Id.* at 432-33. The Fourth Circuit affirmed the jury's finding that the credit card company had not conducted a reasonable investigation of the disputed information where its agents testified that, "in investigating consumer disputes generally, they [did] not look beyond the information contained in the [computerized system] and never consult[ed]

underlying documents such as account applications." *Id.* at 431. As in *Johnson*, Trans Union was required to look beyond Toyota's response to its ACDV and consult the underlying documents, some of which Brill even provided to Trans Union.

Trans Union also contends that *Johnson* is inapposite because it dealt with a furnisher's obligation to investigate disputed information under section 1681s-2(b)(1), not a consumer reporting agency's similar obligation under section 1681i(a)(1)(A). Response Br. 20-21. *Johnson*, however, concluded that the "general balancing test" endorsed by this Court in *Henson* for section 1681i claims "logically applies in determining whether the steps taken (and not taken) by a creditor in investigating a dispute constitute a reasonable investigation." 357 F.3d at 432-33. Trans Union does not even acknowledge this aspect of *Johnson*, which Brill pointed to in his opening brief (at p. 21).

**C.**     Trans Union dismisses *Cushman*, *Stevenson*, *Johnson*, and *Pinner* on the additional ground that they pre-date the First Circuit's decision in *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008). In Trans Union's view, by relying on these cases, Brill "ignores the critical development in the law that a [consumer reporting agency's] duty to reinvestigate is only triggered when the dispute alleges a factual deficiency susceptible of resolution through a reasonable reinvestigation." Response Br. 19-20. It should go without saying that the First

Circuit decision in *DeAndrade* does not alter the binding precedent of other courts of appeals, including this Court. In any event, as Brill has explained, *DeAndrade* is consistent with *Henson*, as well as the decisions of the Third, Fourth, and Fifth Circuits. *See* Opening Br. 27-31.

In analyzing a reinvestigation claim, *DeAndrade* asked whether a "credit bureau could have uncovered [an] inaccuracy 'if it had reasonably reinvestigated the matter.'" 523 F.3d at 68 (quoting *Cushman*, 115 F.3d at 226). It concluded that the consumer reporting agency could not have done so because the dispute hinged on legal, rather than factual, questions, such as whether, by making payments on a loan, a homeowner had ratified a loan that a contractor had set up on the homeowner's behalf. *Id.* at 68. In contrast, the scenarios in *Cushman*, *Stevenson*, *Johnson*, and *Pinner* involved disputes based on questions of fact that were susceptible to resolution through reinvestigation. *Cf. Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (affirming summary judgment to a reporting agency because "[n]o reasonable investigation on the part of [the reporting agency] could have uncovered any inaccuracy in [the consumer's] report because there was never any factual deficiency in the report"). The key question in this case—whether Brill signed the lease extension—is similarly

16

susceptible to resolution by a thorough reinvestigation.[2] Thus, even under what Trans Union considers the "decisive inquiry" identified in *DeAndrade*—that is, whether a consumer reporting agency "could have uncovered the inaccuracy if it reasonably reinvestigated the matter," Response Br. 14 (internal quotation marks omitted), Brill's claim should not have been dismissed.

Trans Union offers an extended discussion of an unpublished district court decision in this circuit that applies *DeAndrade*. But the reasoning in *Omar v. Experian Information Solutions, Inc.*, No. 10-cv-1047, 2012 WL 2930778 (S.D. Ind. July 18, 2012), on which Trans Union relies, poses no barrier to Brill's claim. *Omar* determined that a consumer's section 1681i reinvestigation claim failed because the plaintiff had "not given Experian any information suggesting that the item in his credit report was false or inaccurate," and it was "undisputed that any attempts to contact" management of the creditor "would have yielded no new relevant information." *Id.* at *6-*7. Here, in contrast, Brill offered documentation

---

[2] Tran Union emphasizes (at p. 14 & n.3) that disputed information must be inaccurate to support a FCRA reinvestigation claim. To the extent Trans Union suggests that Brill does not meet this standard, it is wrong. Brill has alleged inaccuracy with specificity and plausibility many times over. *See* A22-23 (complaint alleging that Brill did not execute the lease extension at issue in this case, that the signature on the extension was a forgery, and that the reporting of a continued relationship between Brill and Toyota after the 36-month original lease term was inaccurate).

to support his claim for falsity and the parties dispute whether further inquiries could have yielded new relevant information.

## IV. The FCRA Does Not Relieve Consumer Reporting Agencies of Their Duty to Reinvestigate in Cases of Fraud.

Trans Union contends that "the proper target of Brill's claim is Toyota," not Trans Union, because Trans Union "had no authority to cancel Toyota's lease or relieve Brill of his obligation to Toyota." Response Br. 18. A consumer reporting agency's obligation under the FCRA to reasonably reinvestigate a disputed debt is not conditioned on legal authority to declare a debt invalid. *See*, *e.g.*, *Henson*, 29 F.3d at 287 (describing balancing test). Adopting Trans Union's view would create a significant exception to *Henson*'s balancing test. Moreover, it is inconceivable that Congress intended to sideline consumer reporting agencies in this way given its recognition of the "crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole." *Cushman*, 115 F.3d at 223 (internal quotation marks omitted).

Trans Union resists Brill's contention that Congress intended for consumer reporting agencies to play a central role in ensuring the accuracy of information in credit reports. Although Trans Union faults Brill for relying on "direct quotes from the FCRA" as evidence of this role, Response Br. 15, Brill believes, as does this

18

Court, that Congress "means in a statute what it says there." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1047 (7th Cir. 2013) (internal quotation marks omitted). The language of the statute contemplates that consumer reporting agencies will bear a significant responsibility in verifying information within their records. *See*, *e.g.*, 15 U.S.C. § 1681e(b) (providing that, in "prepar[ing] a consumer report," a consumer reporting agency must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates"); *id.* § 1681(b) (identifying FCRA's purpose as "requir[ing] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . information in a manner which is fair and equitable to the consumer," including with respect to the information's "accuracy").

Trans Union makes much of the fact that Brill previously sued Toyota for its role in reporting inaccurate information. Response Br. 18. That Brill had enforceable rights against Toyota under the FCRA in no way absolves Trans Union of liability for harm caused by its own failure to fulfill its statutory obligation. Congress created certain private rights of action under the FCRA against both furnishers and consumer reporting agencies. *See* 15 U.S.C. §§ 1681n, 1681o; *see also id.* § 1681a(b) (defining "person[s]" covered by the FCRA). Nothing in the

FCRA suggests that a permissible claim against one such entity might preclude a claim against the other.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order dismissing Brill's complaint.

Dated: June 1, 2016                    Respectfully submitted,

                                       /s/ Julie A. Murray
Joel Winnig                            Julie A. Murray
ATTORNEY JOEL WINNIG                   Allison M. Zieve
414 D'Onofrio Drive, Suite 120         PUBLIC CITIZEN LITIGATION GROUP
Madison, WI 53719                      1600 20th Street NW
(608) 829-2888                         Washington, DC 20009
                                       (202) 588-1000
                                       jmurray@citizen.org

*Counsel for Plaintiff-Appellant Jeffrey Brill*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of 32(a)(7)(B) because this brief contains 4,600 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14-point type.

/s/ Julie A. Murray
Julie A. Murray

## CERTIFICATE OF SERVICE

I certify that on June 1, 2016, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Julie A. Murray
Julie A. Murray